Bland, Chancellor.
Ordered, that writs of subpcena and injunction issue as prayed by the foregoing bill of complaint. And it is further Ordered, that at any time after the filing of the answers of the defendants, the court will hear a motion to dissolve the said injunction; Provided, that the defendants give to the plaintiff or his solicitor, five days notice thereof. And the Register is directed to endorse a copy of this order on the writ of injunction, that it may be served therewith on the defendants.
To this bill Isaac M. Cheesborough, called in the bill Charles Cheesborough, and the other defendants, put in their joint and several answer, on the 30th of May, 1831, in which they stated that the *387 defendant Winchester was the president of the company; that the defendant McNeill was their principal engineer; and that the other defendants were their agents ; that the company had, under authority of the act of 1827, ch. 72, by which they were incorporated, located their rail road over the land of the plaintiff; and were proceeding to construct it as alleged; that in repeated conversations with the plaintiff, he was assured that he should have a jury convened to assess the damages done to his land, whenever he thought proper; but his demands were so extravagant, that the company could come to no agreement with him, in consequence of which a jury was summoned and an inquisition taken in the manner prescribed by the act of incorporation ; upon which the jury determined that the plaintiff would sustain no damage whatever by the rail road passing over his land; that at the place where the plaintiff’s way, spoken of in his bill, passed over the route of the rail road, it became necessary to make a perpendicular cut of many feet, and the greater part through solid rock; and consequently, his right of way wras turned in another direction, equally convenient, over the route of the rail road ; that the inquisition was not withheld at the instance of these defendants ; but was, in fact, returned within a very short time after it was taken, and to the then next session of the County Court; and the hearing of the plaintiff’s exceptions to it was necessarily, and only postponed to the next term, because he refused to consent to the fixing of a day in that term for the hearing; that there had been no procrastination at the instance of the company in the taking or returning of the inquisition, or of the hearing of the exceptions to it; that the warrant for the taking of it had been issued by a justice of the peace ; and it had been, in all respects, regularly and legally executed, with full notice, and in the presence of the plaintiff and his solicitor, who was fully heard by the jury.
The defendants after filing their answer gave notice of a motion to dissolve the injunction as allowed by the order of the 17th of May.
4th June, 1831.
Bland, Chancellor.
This case standing ready for hearing on the motion to dissolve the injunction, and the solicitors of the parties having been fully heard, the proceedings were read and considered.
The act of Assembly by which this company have been incorporated, authorized them to construct a rail road from the city of Baltimore to the river Susquehanna; and, for the purpose of eye *388 cuting that work, deemed to be of public utility, they have been authorized to cause lands, held as private property, to be taken and condemned to that use; and, according to the mode specified, the owners are allowed to obtain a compensation for the injury they may sustain by the construction of the proposed rail road over their lands, (a) It has not been intimated that this legislative enactment is, in this or in any other respect, unconstitutional; and therefore, the only questions which this court can now be called upon to consider are such as relate to the fairness of the conduct of the body politic in the execution of their act of incorporation.
By its fifteenth section it is declared, that in all cases where the company cannot agree with the owner of any land which may be wanted for their road, they may have it condemned by a jury to their use. It is not said that the damages must be ascertained by a jury before the company enters upon the land for the purpose of constructing their road; nor is any time specified within which the inquisition must be taken; but it is declared that the inquisition shall be returned to the clerk of the county, and shall be confirmed by the court at its next session, if no sufficient cause to the contrary be shewn; and when confirmed shall be recorded; and further, that upon the payment of the valuation to the owner of the land, the estate and interest therein shall vest in the company. But it is manifest from the general nature of this provision, that if the benefit estimated by the jury as likely to result to the owner from conducting the rail road through his land should amount to a total extinguishment of his claim for damages, that then the estate and interest must vest in'the company immediately upon the confirmation of the inquisition; because, where nothing is required to be paid by the corporation, the confirmation of the inquisition by the court must be considered as that last act upon which the vesting of the interest in the company is to depend.
The objects of the inquisition are to designate the land taken, and to compensate the owner to the full extent of the injury he may sustain. Hence it cannot be indispensably necessary, in all cases, to have it taken before the company proceed to construct their road; because, the estimate of damages may, in many cases, be as accurately made after the road has been nearly or entirely completed, as before the land was entered upon for the purpose of its construction. Indeed as to all deep cuttings, or high *389 embankments, to a sensible jury of the country, the ascertaining of the damages which the owner of the land would, or had sustained, would be much more clearly understood and readily estimated on viewing the work after it was done, than it could be by any description given of what it might be when done. But, where a public road is proposed to be opened under the authority of the county court, it is expressly declared, (hat the damages shall be paid to the respective parties before the road shall be opened ; and consequently, the site of such a proposed road must be viewed and laid down, and the damages assessed before any entry can be made upon it. (b)
There is another and a more special provision in the eighteenth section of this act of incorporation, which expressly requires the valuation to be made before the property proposed to be taken is changed or altered by admixture with other substances. The reason of this is also sufficiently clear; the two provisions, taken in connection, shew, that it was intended, in all cases, that the subject of the inquisition should be viewed and inspected by the jury; and that they should have it so placed before them as to enable them to form a correct judgment as well from what they saw as from what they might hear in proof. In the case of an injury done by deep cutting or embankment, the understanding of the jury would be more enlightened by inspecting the wrork after it was done, than by viewing the site of the road before it was constructed ; and therefore, the inquisition w'ould be best taken after the road had been made; but in other cases, or where the materials proposed to be taken are to be blended with other substances, then it is clear, as the law expressly requires, that the inquisition should be taken before the admixture or alteration has been made.
These provisions of this act of incorporation are similar to those of almost all other laws authorizing land to be taken for the making of roads and canals; and they have been introduced into this and all similar acts of the Legislature, as a substitute for the ancient writ of ad quod damnum; and therefore, so far as the Legislature have been silent as to the mode of proceeding, or the nature of things requires it, they must be governed by the general principles of law applicable to the proceedings under a writ of ad quod damnum; since the object to be accomplished by both is the same, (c) According to the common law the inquisition under a *390 writ of ad quod damnum is, in all cases, required to be taken before the property can be entered upon, unless it should be specially dispensed with by statute, or the grant itself; (d) but, in this *391 instance, it is obvious, that the taking of the inquisition, as a preliminary to the property’s being made use of by the company is only required in some few particularly specified cases. In the taking of an inquisition under this and similar statutory provisions, it must appear, that the authority so given has been pursued; and, as under a writ of ad quod damnum, there should be no unreasonable delay, much less could any fraudulent practice be allowed to pass without check or rebuke, (e)
In this case it is clear, from the answer, all the statements of which on this motion must be taken to be true, that the inquisition has been had before the property taken was covered up or obscured by admixture with other substances; and, at a time, and in a manner when the jury were enabled to form a correct estimate of the claim for damages; and, it is also manifest, that there has *392 been no unreasonable delay, misrepresentation, or fraud practised by any one to the prejudice of the plaintiff; and therefore, this company cannot, from any thing now appearing, be any longer restrained from proceeding with their work.
Whereupon it is Ordered, that the injunction heretofore granted in this case, be, and the same is hereby annulled and dissolved.

 1827, ch. 72.

 1818, ch. 89, s. 10.

 Rex v. Inhabitants of Flecknow, 1 Burr, 465.

 Jacob Law Dict. v. Ad Quod Damnum.
Pressly’s Case. — Charles, absolute Lord and Proprietary of the Province of Maryland and Avalon, Lord Baron of Baltimore, &c.
To the sheriff of St. Mary’s county, greeting; we command you, that by the oaths of twelve honest and lawful men of the county by whom the truth of the matter may be better known, you diligently inquire if it be to the damage of us or others, if we grant unto Col. Peter Pressly, of the colony of Virginia, twenty acres of land lying upon the head of St. Mary’s river, in Saint Mary’s county, aforesaid, being the place where Thomas Waughop formerly had built a water-mill upon, viz: ten acres on one side of the head of said river, and ten acres on the other side thereof, together with liberty to take, fell, cut down and carry away, either by land or water, any wood or timber wood fit for building a mill, other than timber fit to split into clapboards, next adjoining to the said twenty acres of land lying on each side of the said river in the county aforesaid. And if it be to the damage and prejudice of us, and to what damage and prejudice of others, and of whom, and in what manner, and how; and of what value they are by the year, according to the true value thereof now, before any further improvement of the said twenty acres of land, and who are the present possessors of the said twenty acres of land, and what lands and tenements remain to the said present possessors, over the said twenty acres, will suffice to uphold their manor, viz: the sixth part of their manor allotted them by the conditions of plantations for the demesne as before the alienation; so as the county, by the alienation aforesaid, in default of the present possession, more than was wont, be not charged and grieved. And the inquisition therein openly and distinctly made to us in our Chancery under the seal and seals of them by whom it was made, without delay, you send. Witness ourself, at the city of Annapolis, this twenty-fourth day of October, in the seventh year of our dominion, Annoque Domini 1722.
E. Gripeith, Reg. in Chan.

Maryland, st.

An inquisition indented and taken, by virtue of the writ which is hereunto annexed, at the head of St. Mary’s river, in Saint George’s and Saint Mary’s hundred, in the county of Saint Mary’s, by the oath of Richard Forrest, William Coombs, Timothy Tolle, Henry Taylor, Thomas Price, William Price, John Hilton, Clement Cheverill, John Cole, John Green, Alexander Ferguson, and John Morgan, honest and lawful men of the vicinage, who upon their oaths do say, that ten acres of land lying on the east side of the run of Saint Mary’s river, being the place where formerly Thomas Waughop had built a water-mill, is part of a tract of land now in the possession of a certain Charles King, whose name and contents they know not, is to the damage of the said Charles King, the sum of twenty shillings current money of the province, and is of the yearly value of twelve pence, like current money; and the ten acres of land lying on the west side of the run aforesaid, is part of his Lordship’s mill manor, and is to the damage of his Lordship, the Right Honourable the Lord Proprietary of this province, the sum'of twenty shillings, current money of this province, and of the yearly value of twelve pence, like current money.
In witness whereof, as well the sheriff of the county of Saint Mary’s aforesaid, as the jurors by whom this inquisition was taken, have hereunto affixed their seals, this thirtieth day of August, in the year of our Lord one thousand seven hundred twenty and three. (Signed) Richard Hopewell, Sheriff, fyc. §-c.
*391 Maryland, Saint Mary’s County, si.
At the request of Peter Pressly, of the colony of Virginia, gentleman, in the presence of the sheriff and a jury of the vicinage, I have laid out twenty acres of land, viz: ten acres on each side of the main fresh run of Saint Mary’s river, it being the place where formerly stood a mill belonging to Thomas Waughop, of Saint Mary’s county, gentleman. The ten acres, on the east side of the said run, being part of a tract of land now in possession of Mr. Charles King, of the said county, the said ten acres being thus bounded; beginning at a Spanish oak marked with six notches, standing on the oast side of the said run, and running thence north fifty-eight degrees, east forty perches, north twenty-eight degrees, west forty perches, south fifty-eight degrees, west forty perches, then by a straight line to the first beginning. And the ten acres on the west side of the aforesaid run, being part of his Lordship’s mill manor, and heretofore taken up for the use of the said mill by the said Thomas Waughop, and bounded as follows ; beginning by the run on the west side of the same, opposite to the end of the last line of the former ten acres, and running thence south fifty-eight degrees, west forty perches, then south twenty-eight degrees, east forty perches, then north fifty-eight degrees, east forty perches, then with a straight line to the beginning. Surveyed the 30th day of August, 1723,
Chancery Proceedings, lib. No. 3, fol. 1052. Per me Lawrence Lant.
The above proceedings were had under the act of 1704, ch. 16, which in its preamble, among other things, stated, that ‘as the most part of the places fit for setting up water-mills, are already in the hands of persons under age, or unable to be at the charge of building a water-mill, or else such as are wilfully obstinate in forbidding and hindering such persons as would purchase the said places fit for building watermills, and set them up, to the increase of our trade and navigation; much to the public damage of this province.’ And then enacts, that any person may acquire a title to a mill-site as therein prescribed; and gives the form of the writ of ad quod damnum under which such proceedings were to be had. But this act, except its sixth and seventh sections, was repealed by the act of 1766, ch. 10, with a saving of the rights of those who had previously taken out writs of ad quod damnum.

 Ex parte Vennor, 3 Atk. 766; Rex v. Inhabitants of Flecknow, 1 Burr, 465; Rogers v. Bradshaw, 20 Johns. Rep. 735; Rex v. The Mayor of Liverpool, 4 Burr, 2244; The King v. Bagshaw, 7 T. R. 363.