# LEVI BLACK *vs.* THE FIRST NAT. BANK OF WEST-MINSTER.

*Rights of Holder of Accomodation Note or Note Negotiated in Breach of Contract—Authority of Officer of Corporation to Endorse Note Payable to it—Notice to Corporation—Cross-Examination of Witness—Admissibility of Evidence—Harmless Error—Discount or Sale of Promissory Notes—Powers of National Banks—Notes Pledged as Collateral.*

It is no defense to an action on a promissory note by a *bona fide* holder that the note was executed upon an agreement between the maker and original payee that the latter should deposit it in bank as collateral security for a loan ; that the bank was not to negotiate the note, and that the plaintiff received the note knowing these facts.

The fact that the endorsee for value of a promissory note knew that it was an accomodation note between the original parties is not a defense to an action by him on the note.

When a promissory note, negotiable in form, was executed and delivered upon the faith of an agreement by the payee to do certain things, the holder for value of such note, who has notice of the agreement but not that the payee has broken the contract, is entitled to recover on the note.

When it is shown that the treasurer and secretary of a corporation was accustomed to endorse notes payable to the corporation, it will be presumed in an action by a holder on a note so endorsed that the treasurer was duly empowered to make endorsements, when there is no evidence of fraud or illegality in the transaction.

Notice of a certain fact given to a director of a corporation privately, or information which he acquires from general rumor, and which he does not communicate to his associates on the board, is not notice to the corporation.

The rule that a witness can only be cross-examined as to matters testified to by him upon his examination in chief is not to be construed so as to prohibit a cross-examination relating to collateral circumstances which are connected with, and relevant to, the main inquiry concerning which the witness had testified.

A judgment will not be reversed merely on account of the admission of incompetent evidence against the objection of the other party when the same fact is proved in the case by other competent evidence.

Although it is not competent for a witness to state his deduction or infer-ences from certain facts, yet, if he is permitted to do so, the error is a harmless one when the inference is one which the jury would draw by their unaided common sense.

When one of the questions in the case is whether a principal note to se-cure the payment of which other notes had been put up as collateral had been paid or not, evidence as to the amount collected on the notes held as collateral is admissible.

A pass-book in a bank is competent evidence to show that a note had been discounted.

Defendant executed and delivered to an association two promissory notes negotiable in form, and these notes together with similar notes of other parties were deposited with the Old Town Bank as collateral security for advances to be made to the association. That bank subsequently discounted for the association the latter's own note for $5,000 on the credit of the notes so held as collateral. About the same time the plain-tiff bank discounted for the Old Town Bank the $5,000 note, taking as collateral the notes so held by the latter bank for that purpose includ-ing defendant's notes. The association having become insolvent, plain-tiff bank brought this action on defendant's notes, which were endorsed only by the association as payee and not by the Old Town Bank. De-fendant alleged that the plaintiff bank did not discount the note it took but had purchased it and had no power as a national bank to purchase notes. *Held,*

1st. That the evidence in the case shows that the transaction between the banks was a discount of the notes and not a sale, and that the jury was properly instructed upon the facts that the plaintiff bank was entitled to recover in this action.

2nd. That even if the note in question had been sold to the plaintiff bank, yet since it had parted with its money upon the faith of the collateral notes as well as the principal one, the plaintiff would still be entitled to recover.

The discount of notes in banking is the advance or loan of money not due till some future period, less the legal rate of interest which would be due thereon when payable.

Appeal from the Circuit Court for Carroll County (JONES, C. J.)

*Plaintiff's 1st Prayer.*—That if the jury find from the evidence the incorporation of the United Milk Producers' Association of Baltimore City, the payee of the notes sued on in this case, given in evidence; that the defendant was a member of said association; that said notes were delivered by the defendant to said association, and that before the maturity of either of said notes, said association, by its treasurer, James B. Councilman, if they so find, endorsed the notes sued on in blank and delivered the same, with other notes similarly endorsed to Mr. Wilcox, cashier of the Old Town Bank; that at the time of, or after receiving the notes sued on in this case, with other collateral notes from the makers thereof, endorsed in blank by said association, if the jury so find, the said United Milk Producers' Association made its promissory note for $5,000 dated June 6th, 1900, drawn payable ninety days after date, to the order of James B. Councilman, treasurer; that said note was endorsed in blank by said James B. Councilman treasurer, and was then delivered to said Old Town Bank, and if the jury further find that the said Old Town Bank, through its cashier, procured said note for $5,000 so indorsed, to be discounted by the plaintiff upon an agreement that it should receive as security therefor said collateral notes if the jury so find; and that the plaintiff did discount said note of the Milk Producers' Association for $5,000 upon the faith of said agreement, for said collateral notes as security therefor, and that pursuant to said agreement the plaintiff received from the Old Town Bank ninety of said collateral notes so endorsed, including the notes sued on in this case, as security for said payment of $5,000 note; and that the plaintiff paid the proceeds of said discount to the said Old Town Bank, and that said Old Town Bank gave the said United Milk Producers' Association credit for the same on its pass-book, and that said association checked out of said Old Town Bank the proceeds of said discount, and that more than $4,000 of said $5,000 note, with interest, still remains unpaid, then they must find their verdict for the plaintiff for the amount of said notes sued on in this case, with interest from the maturity thereof. (*Granted.*)

*Plaintiff's 2nd Prayer.*—If the jury find that the defendant signed the two notes sued on in this case, and delivered the same to the United Milk Producers' Association of Baltimore City, and that said association endorsed the same in blank by James B. Councilman, its treasurer, and delivered the same so endorsed to the Old Town Bank of Baltimore, then the jury are instructed that said instruments are negotiable promissory notes, and the title thereto passed by delivery from said Old Town Bank to any person receiving the same in good faith for value ; and if they further find that the same were delivered by said Old Town Bank to the plaintiff for value, then the plaintiff acquired a good title thereto, there being no evidence in this case legally sufficient to show bad faith on the part of the plaintiff in so receiving said notes, and the jury are further instructed that that the words "Payable at the Old Town Bank of Baltimore," printed on said notes, does not affect their negotiability.   (*Granted.*)

*Defendant's 1st Prayer.*—That unless the jury is satisfied by a preponderance of evidence, that James B. Councilman, was the treasurer of the United Milk Producers' Association, and as its agent had full power and authority to endorse the notes upon which suit has been brought to the plaintiff, or that the United Milk Producers' Association received the money for said notes their verdict must be for the defendant.   (*Rejected.*)

*Defendant's 2nd Prayer.*—If the jury shall find from the evidence, that the promissory note for $5,000.00 drawn by the United Milk Producers' Association to the order of James B. Councilman, treasurer, and by him endorsed in blank was not discounted by the plaintiff for said United Milk Producers' Association, but that the same was purchased from the Old Town Bank of Baltimore, without the knowledge, or by the direction of said United Milk Producers' Association, then said note was obtained by the plaintiff in contravention of the revised statutes of the United States defining the powers of national banks, and the verdict of the jury must be for the defendant, provided, that the jury shall further find that the promissory notes of the defendant upon which this suit has

been brought, were held by the plaintiff as collateral security, for the payment of said note of $5,000.   (*Rejected.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER JJ.

*Charles E. Fink* and *Guy W. Steele* (with whom were *Roberts & Crouse* on the brief), for the appellant.

The lower Court should be reversed for the following reasons : (*a*) Because there is no inherent power in the office of treasurer of a corporation to endorse promissory notes.   (*b*) Because an accommodation maker of a note is discharged by its fraudulent diversion.   (*c*) Because a national bank cannot recover against an accommodation maker of a note it has bought.   (*d*) Because a national bank in *purchasing* a note, obtains no legal title thereto, and cannot recover against the maker unless the latter was privy to the transaction.   (*e*) Because the plaintiff cannot in rebuttal make out his case in chief.

The president, secretary or treasurer of a corporation, is simply an agent of the board of directors.   He is elected by them, and his acts are limited to the power given by the directors, unless the general law, or its charter, or by-laws authorize him to perform particular acts.   There is no power, however, in any of these officers, inherent to the office, that will enable them to make promissory notes, or endorse them in the name of the corporation.   *Hallowell Bank case,* 14 Mass. 180; *McCullough case,* 5 Denio, 576; *People's Bank case,* 39 Hun. 500; *First Nat. Exch. Bank case,* 31 L. R. A. 536; *Waite case,* 14 L. R. A. 356; *Tiedman, Comm. Paper,* 121; *Cook on Stock and Stockholders,* sec. 716; 4 *Thomp. on Corporations,* sec. 4619; 1 *Morawetz, Priv. Cor.,* sec. 537; *Daniel on Neg. Instr.,* sec. 395.   The endorsement of the notes by the corporation having been denied, it was incumbent upon the plaintiff to prove the authority of James B. Councilman, treasurer, to act for it.   This it absolutely failed to do.   No evidence was offered to show a vote of the board of directors empowering him to do this.

The plaintiff knew that the defendant had received absolutely no consideration for these notes ; knew that they were given to the association for the purpose of being used by it at the Old Town Bank as collateral security ; knew that the association was guilty of a breach of faith in not discounting them at the Old Town Bank ; knew that the Old Town Bank had no authority to negotiate them, and the offer of evidence tended to show these facts, which would have absolutely prevented the plaintiff from recovering.    *Maitland case*, 40 Md. 540, 568; *Citizens' Nat. Bank* v. *Harper*, 47 Md. 88; *Benj.* v. *Rogers*, 126 N. Y. 60; *Ewing* v. *U. S. Nat. Bank*, 131 N. Y. 506; *Randolph, Commercial Paper*, secs. 1804 and 1894.

If these notes were not discounted by the plaintiff, but were discounted by the Old Town Bank, and immediately negotiated to the plaintiff, this would have been a fraud on the part of the Old Town Bank perpetrated upon the defendant.  Its assurances, that it would look to the association for the payment of these notes in the manner hereinbefore stated ; that it would not negotiate them, and then immediately upon their receipt transferring them to the plaintiff, was evidence tending to show, that it had falsely represented its intention to the defendant, and that when it made these representations, it never intended to fulfill them.    It was these representations of the Old Town Bank that induced the defendant and other farmers to give their notes, and if falsely made, was a fraud of the basest character.    1 *Bigelow on Fraud*, 484.    The fact that these notes were immediately negotiated was evidence tending to show this.

The evidence embodied in the 4th, 5th and 6th exceptions all hinge upon the admissibility of the $5,000 note and its admission being clearly erroneous, because the authority of the officers to bind the association was not proved these exceptions must also be sustained.

The 5th exception is to the admission of a letter from Wilcox, cashier of the Old Town Bank, to the cashier of the plaintiff.    This is but an attempt to put in evidence the declarations of a third party not made in presence of the defendant.    The 6th exception is an attempt to prove that the Old Town Bank

received the proceeds of the $5,000 by offering the plaintiff's drafts in evidence.    How this could be evidence without proof of the endorsements is inconceivable.

The evidence offered by the plaintiff in the 7th and 8th exceptions although it would have been admissible in chief was plainly inadmissible in rebuttal.  It was an attempt to show that the notes sued on were simply held as collateral security for the payment of the $5,000 note, and that not enough had been collected to pay this note.    It was in rebuttal only of evidence offered by the plaintiff for the defendant against his objection. In other words, the plaintiff sets up a defense for the defendant, and then is permitted to destroy it.

The contents of the pass-books were clearly inadmissible. Their identity was not established, and they were not in the handwriting of James R. Schultz, the only witness who testified in regard to them.

Defendant's first prayer should have been granted by the Court.   It presented to the jury for its determination, the authority of Councilman to endorse the note for the association. This authority was challenged by the 4th, 5th, 6th and 7th pleas and issues were joined thereon, and it was necessary for the plaintiff to establish by proof, that said Councilman had full power and authority to endorse said notes, or that the association received the proceeds thereof.    1 *Nat. Exch. Bank cas?*, 31 L. R. A. 536.   The Court erred also in sustaining the plaintiff's special exception to this prayer.   There was not a scintilla of evidence in the case to show ratification by the association of Councilman's endorsement of this note, except possibly the evidence of the pass-books, which is covered by the last clause of the prayer.

Defendant's 2nd, 3rd, 4th and 5th prayers are founded on the theory that the plaintiff *purchased* the notes in suit from the Old Town Bank, and did not *discount* them in the usual course of its business, and consequently, that the plaintiff obtained no title to the notes and was not entitled to recover upon them. The 2nd and 3rd prayers are in practically the same language as the 7th prayer in the *Lazear case*, 52 Md. 89–90.   The 4th

and 5th prayers set out facts, which if found by the jury, constitute a *purchase* and not a *discount* in law.

It is not necessary to argue that a national bank has no authority to purchase promissory notes.    That question is *res adjudicata* in Maryland.   *Lazear case*, 52 Md. 123, 124 and 125.   The only question, therefore, is, do the facts set forth in the defendant's prayers constitute a purchase ?   The distinction in law between a purchase and a discount is well defined.   When a note is discounted, the party who receives the money for it, remains *liable for its payment* as endorser.   When the note is purchased the party who sells does *not remain liable for its payment.*   " There is a difference between buying a bill and discounting it.   The former word is used when the seller does not endorse the bill or endorses it without recourse and is not accountable for its payment."   *Bouvier Law Dict.*, *Title, Discount; Nicholson et al* v. *Bank*, 16 L. R. A. 223, 225. What do the facts in this case show ?   There is no dispute about them.   The Old Town Bank was in possession of these notes.   It transferred them to the plaintiff, who paid the money for them to the Old Town Bank.   No liability was assumed by the Old Town Bank.   It did not endorse the notes.   It did not guarantee their payment and it did not agree in any manner to be liable therefor.   How can it for a moment be questioned that this was a sale ?   The plaintiff seemed to be under the impression that it was necessary that usurious interest be charged in order to bring it within the definition of a purchase.   But that is not true.   The amount of interest deducted could at best be only evidence tending to show a sale.

*W. Burns Trundle* and *Jno. Milton Reifsnider*, for the appellee.

The point of the first exception is want of sufficient evidence of authority to James B. Councilman, treasurer, to endorse the name of the payee on the back of the notes.    But his authority is presumed *prima facie*.   The possession of a note by an endorsee purporting to be endorsed by a corporation, is *prima facie* evidence that it was so endorsed, without proof that the person who made it had authority to do so.   *National Bank*

*of Battle Creek* v. *Mallan*, 37 Minn. 404; 1 *Beach Corp.*, sec. 189.    But the point is concluded by sec. 43, of the Negotiable Instrument Law.

The defendant having proved by George R. Gehr, the cashier of the plaintiff bank, the fact of the plaintiff's receiving the two notes sued on ; the agreement to take them ; from whom he received them ; the sending of the two drafts in evidence to the Old Town Bank ; and the payment of the proceeds to that bank, the plaintiff was certainly at liberty, on cross-examination, to bring out all the material circumstances connected with those facts, in order to put the same in their true light before the jury.    A material circumstance, germane to the fact of the plaintiff getting into its possession the two notes sued on, was the fact that they were received with other notes, as collateral security for the $5,000 note of the United Milk Producers' Association, dated 6th June, 1900, already identified and proved by the witness Ross, and now put in evidence, the reception of which is the ground of the third bill of exceptions.    As the note had been duly proved and was connected with the subject-matter of the cross-examination, it was plainly admissible.

The defendant's tenth bill of exceptions brings up for review the rulings on the prayers, of which the plaintiff offered two, the defendant five.    Defendant excepted to plaintiff's prayers on the ground that there was no evidence in the case legally sufficient to show a discounting of the $5,000 note. As the record is replete with such evidence, this exception was necessarily overruled.

The letter of Theodore F. Wilcox, cashier of the Old Town Bank, " enclosed find note of the United Milk Co. $5,000 *to be discounted* for them as per our conversation today," &c., set out in the fifth bill of exceptions, shows a previous oral agreement between the cashiers of the two banks, that the plaintiff bank would discount the $5,000 note, for which the notes sued on are collateral, and that pursuant to that agreement, the $5,000 note was forwarded to the plaintiff on that day. Further, that the Old Town Bank, in the running account on its books with the plaintiff bank, charged the latter with the

*net proceeds of the note* $4,924.17, " less *91 days' discount* from today." The interest on $5,000 for 91 days at 6 per cent is $75.83; this deducted from $5,000, the face of the note (being what is meant by the word discount), leaves $4,924.17, the exact debit against the plaintiff bank, that discounted the note.

The letter of George R. Gehr, the cashier of the plaintiff bank, of 7th June, 1900, to Theodore F. Wilcox, cashier, in the seventh bill of exceptions, in reply to his letter of the 6th June, demonstrates that the plaintiff bank got the $5,000 note by *discontinuing it.* " I credit $588.70, $4,924.17 pro. of note disctd." It was forwarded to him by Wilcox, cashier *to be* discounted ; this letter shows *it was* discounted. The note for $5,000 having been thus discounted by the plaintiff bank and the Old Town Bank, the agent of the United Milk Producers Association, to get and furnish the money, having received credit on the books of the plaintiff bank for the net proceeds of the discount $4,924.17, it then, under the date of 7th June, 1900, credited the Milk Association with the note less the discount thus :

$5,000

dis.    75.83–                                $4,924.17

as appears in the eighth bill of exceptions.

The witness, James R. Schultz, an employee of the Old Town Bank, fully proves, by his evidence in the ninth and tenth bills of exceptions, that the four entries in the pass-book of the Milk Association, under date of June 7th, were discounts of four notes of $5,000 each, the third being the one in evidence.

As the plaintiff's first prayer in the record is a plain summary of the facts of the case, and the drawing of the legal conclusion from those facts, if found by the jury, the granting it was plainly right.

Plaintiff's second prayer is elementary.

The defendant's first prayer was calculated to mislead the jury, as pointed out in the plaintiff's second exception thereto, and for that reason was properly rejected.

The theory of the defendant's second, third, fourth and

fifth prayers is, that the transaction was *a sale* of the $5,000
note by the Old Town Bank to the plaintiff; that there was
evidence legally sufficient to show such sale, which should
have been submitted to the jury; that if they found that the
plaintiff acquired possession of said note by purchase, then it
exceeded its corporate powers, and such purchase was *ultra
vires*, and thereby the plaintiff got no title; that the plaintiff
having no title to the principal note, and no right to
recover thereon, it has none as to the collateral notes sued on,
and that this defense is open to the defendant; and therefore
upon the hypothesis of a sale and purchase of the principal
note, the verdict should have been for the defendant.

In the first place, there is not a *scintilla of proof* in the
record that the plaintiff got the note by *purchase;* and this
defect in the defendant's said prayers, is pointed out in the
plaintiff's special exceptions thereto.   But, it is contended,
the Old Town Bank, from whose cashier the plaintiff received
said $5,000 note, did not endorse it; hence it was a sale.   The
proposition is, whenever the note of A is negotiated to C,
through B, and *B does not endorse it*, that transaction is nec-
essarily a sale.   There is no such rule of law.   What liabili-
ties an agent, who negotiates an instrument *without endorse-
ment*, incurs, are defined by secs. 88 and 84 of the Negotiable
Instruments Law.

"Nothing can be clearer than that by the language of the
commercial world, and the settled practice of banks, a dis-
count by a bank means, *ex vi termini*, a deduction or draw-
back made upon the advances or loans of money, upon nego-
tiable paper, or other evidence of debt, payable at a future
day, which are transferred to the bank."   *Fleckner* v. *Bank of
U. S.*, 8 Wheaton, 338, 353.

This is a leading case, constantly cited whenever the ques-
tion of what is meant by a discount is under discussion.
*Youngblood* v. *Birmingham Trust and Savings Co.*, 95 Ala. 523;
5 *Am. and Eng. Ency.* (1st ed.) 678–9.

As this is precisely what the record shows was done in this
instance; it was a discount and not a purchase of the note;

and there being no evidence legally sufficient to show a sale and purchase of the note, the defendant's prayers were rightly rejected upon that ground.

But the proposition underlying the defendant's prayers, that if a national bank gets possession of a negtioable promissory note by purchase, and not by way of discount, it thereby acquires no title ; that such purchase is *ultra vires, and this defense may be made by the maker of the note, who got value for it,* is not law.   The correct answer to this question depends upon the true construction of sec. 5136, sub-section 7 of the U. S. Revised Statutes, title "National Bank Act." By the second clause of this seventh sub-section, national banks are expressly authorized to carry on the business of banking, "by *discounting* and *negotiating* promissory notes, drafts, bills of exchange, and other evidences of debt ;" and the argument is, that the express power to carry on such business by discounting and negotiating promissory notes, &c., is the negation of the power to carry it on in any other way, as by purchase of a note.   On the first branch of the proposition advanced by the appellant that the purchase of a note by a national bank is *ultra vires*, the authorities are divided ; on the second branch of it, that such defense is open to one who got value for it, the great weight of authority is in the negative.

The construction of a Federal Statute by the Supreme Court is conclusive upon the State Courts.   "The decisions of the Supreme Court of the United States are of conclusive force and effect when deliberately formed and expressed on a question of construction of the Constitution of the United States, or of an Act of Congress made pursuant thereto." *Wilson* v. *Turpin*, 5 Gill, 56.

The converse is equally true.   The construction of a State statute, by the highest Court of a State, is accepted as conclusive by the Supreme Court.   *Green* v. *Neale's Lessee*, 6 Peters, 291, 295, 299; *Rice* v. *Minnesota*, 1 Black, 360; *Davie* v. *Briggs*, 97 U. S. 628; *Fairfield* v. *Gallatin Co.*, 100 U. S. 52; *Louisville* v. *Mississippi*, 133 U. S. 587; *Balto. Traction Co.* v. *Balto. Belt R. R. Co.*, 151 U. S. 138.

Now, the analogous provisions in sec. 5137 of the Revised Statutes, denying to a national bank the right to purchase real estate except (1) for its banking house ; (2) by way of mortgage as security for debts previously contracted ; (3) conveyed in satisfaction of debts previously contracted ; and (4) by purchase at sales under judgments, &c., to secure debts due to it, have been construed to mean that when a national bank takes a note, secured by mortgage, it acquires a valid title both to the note and the mortgage, as against the mortgagor ; the government alone may object, the defense of *ultra vires* is not open to the maker of the note. *National Bank* v. *Matthews*, 98 U. S. 626, 628, 629; *National Bank* v. *Whitney*, 103 U. S. 99; *Swope* v. *Leppingwell*, 105 U. S. 3; *Fortier* v. *New Orleans Bank*, 112 U. S. 451.

· These authorities have been cited, relied on, and followed by this Court in *Heironimus* v. *Sweeney*, 83 Md. 160. Neither section annuls the transaction. It does not lie in the mouth of one who got value for the note to question the right of the bank to the security, for which, in good faith it parted with the money of its stockholders.

The appellant relies on *Lazear* v. *National Union Bank*, 52 Md. 78. The seventh prayer of the appellant in that case (p. 90) asked the trial Court to rule, that if the $5,000 note of Lazear Brothers was purchased by the National Union Bank, it was not entitled to recover, which prayer was rejected. On appeal, for the rejection of the prayer, the judgment was reversed (p. 125). The majority of the Court, relied in support of their ruling on *National Bank of Rochester* v. *Pierson*, 24 Minnesota, 140.

That case was based upon an erroneous construction of the Federal statute. It was overruled in *Merchants' National Bank* v. *Hanson*, 33 Minn. 40. The case was, one Luce, doing business under the name of " Bank of Breckinridge," held several notes, payable to himself by name, or by the name of " Bank of Breckinridge," signed " E. C. Luce." He endorsed these notes and sent them to ·plaintiff bank with a letter requesting their discount, and to place the proceeds of same to

his credit.   Plaintiff did so, placing to his credit the proceeds less interest to time of maturity and advised Luce of its action.   The sum so credited was afterwards paid by the plaintiff.   Before maturity, plaintiff sent the notes to the Bank of Breckinridge for collection, endorsed " Pay Bank of Breckinridge or order for collection account of Merchants' National Bank, F. A. Seymour, cash."   Luce received the notes, and transferred them before maturity with endorsements uncancelled, to defendant in payment of a precedent debt.   Defendant refused to restore the notes to the plaintiff, upon the ground that the plaintiff, having purchased them, got no title.   `The action was for the recovery of their value.   The Court said : ''In *First National Bank* v. *Pierson*, 24 Minn. 140, this Court decided that national banks were not authorized to purchase promissory notes in the ordinary sense of the word 'purchase,' the transaction not being a discounting of the paper, or a lending of money upon the credit of it ; and the defense of *ultra vires* was sustained in an action upon the note so purchased.   Since that decision was rendered the Act of Congres upon which it was based has come before the Supreme Court of the United States for construction.   *National Bank* v. *Matthews*, 98 U. S. 671; *National Bank* v. *Whitney*, 103 U. S. 99.   '' The decision of that Court is to the effect that the enforcement in favor of a bank of securities upon real property, which securities the bank had acquired without authority, could not be opposed by plea of *ultra vires*, but that it was intended by Congress, that the consequences of such violations of law should be only such as might be imposed in proceedings instituted against the bank by the government.   This construction of the law of Congress is authoritative, and it is our duty to follow it.   In doing so, we necessarily overrule *Bank* v. *Pierson, supra,* as to the effect of the plea of *ultra vires* in such cases.   "Applying the principle established by these decisions to the case before us, it is not material whether the transaction through which the plaintiff acquired the notes was a purchase of the notes in the ordinary sense of the word ' purchase' or a discount of the notes as a loan to the payee.

In either case, the plaintiff's right as against the defendant would be the same." Order of the lower Court giving judgment for the plaintiff affirmed without dissent.

The case of *Farmers and Mechanics' Bank* v. *Baldwin*, 23 Minn. 198, also cited and relied on by JUDGE GRASON in 52 Md. 125, was based on *Niagara Co. Bank* v. *Baker*, 15 Ohio St. 68, 87, which was *overruled* in *Smith* v. *Exchange Bank of Pittsburg*, 26 Ohio St. 141; see also *Neilsville* v. *Tuthill*, 4 Dak. 295; *First Nat. Bank* v. *Smith*, 8 S. Dak. 9; *Pape* v. *Capital Bank of Topeka*, 20 Kan. 440.

For a very clear and cogent exposition of the law of this question, see *Prescott Nat. Bank* v. *Butler*, 157 Mass. 548; 16 *Amer. & Eng. Ency.* (1st ed.) 167.

*Lazear's case*, holding that the maker of a note purchased by a national bank, may set up the defense of *ultra vires*, has not a vestige of authority to support it; it never received the sanction of such eminent Judges as ALVEY, J.; BARTOL, C. J., and IRVING, J.; its principle has been in effect overruled in *Heronimus* v. *Sweeney*, *supra*; should the Court deem it material to the decision of the case, it will not hesitate to follow the Minnesota Court in 33 Minn. 40, and overrule it.

It may be objected that the suit here is on the *collateral notes;* that the appellant got no money, hence the defense of *ultra vires* is open to him, while it might not be open to the Milk Producers' Association. But it is clear, both upon principle and authority, that the appellant, as maker of the collateral notes, is precisely in the same position as if he had the appellee's money in his pocket. The principle is thus stated: "Where a debt is contracted at time of the transfer and on the faith of the bill or note, or endorsement of a third party as collateral security, that debt itself forms a part of the consideration of the transfer and constitutes value. This is because the holder may be supposed to part with his property upon the faith not only of the principal instrument, but also of the instrument put up as collateral. The two, as elements of the consideration, are inseparable. The Courts will not inquire whether the holder parted with value because of the original

or collateral paper. They consider such value given for both."
*Norton on Bills and Notes* (3rd ed.), 314, 315; *Bank of State
of N. Y.* v. *Vanderhorst,* 32 N. Y. 553.

PEARCE, J., delivered the opinion of the Court.

This suit was brought by the First National Bank of West-
minster to recover from Levi Black the amount due upon two
negotiable promissory notes for $100 each, made by him and
payable to the order of the United Milk Producers' Associa-
tion, now an insolvent corporation, in six and twelve months
respectively from date. The declaration, which contains the
common counts and a special count upon each of said notes,
alleges that they were endorsed to the plaintiff by the payee
before its insolvency. The defendant pleaded never indebted
as alleged, and never promised as alleged, and subsequently
filed ten additional pleas. The third denied that the plaintiff
was a corporation as alleged, and this, on motion, was stricken
out by the Court, because the defendant, having failed in his
previous pleading to deny plaintiff's incorporation, had thereby
admitted it. There was no exception to this ruling, and none
could have been sustained.

The fourth and fifth pleas denied that the notes were en-
dorsed as alleged. The sixth and seven pleas denied that J.
B. Councilman, the Secretary and Treasurer of the United Milk
Producers' Association (which will hereafter for brevity be
called the association) and by whom the alleged endorsement
was made, was the agent of the association to endorse said
notes to the plaintiff, or that he had power and authority so
to do.

The eighth plea alleged that the notes were procured and
negotiated by the fraud of said association.

The ninth plea alleged that the notes were given to the as-
sociation, and were deposited by it with the Old Town Bank
of Baltimore, and by that bank were delivered to the plaintiff
in breach of faith.

The tenth plea alleged an agreement between the defendant
and said association that these notes were to be deposited by

it with the Old Town Bank of Baltimore as collateral security for advances to be made by it to said association, and that the Old Town Bank was to hold, and not to negotiate, the same ; and that the plaintiff well knowing these facts received said notes from said bank.

The eleventh plea alleged that said notes were executed and delivered for the accommodation of said association, under the agreement set forth in the tenth plea, and that the plaintiff took said notes, well knowing all these facts.

The twelfth plea alleged that the defendant had subscribed to 400 shares of the capital stock of said association upon condition that said association would take his milk and pay him for it, and out of the amount thus due him at the end of each month, would deduct five per cent of his said subscription, to be credited thereon ; and that subsequently said association requested him to give to it three notes covering the amount then unpaid on said subscription, to be deposited with the Old Town Bank under the agreement stated in the tenth plea, and that he gave said notes, two of which are the same here sued on ; that for four months this agreement was carried out, and then said association, without any fault on defendant's part, refused to receive his milk and pay him for it, or to credit anything upon his said subscription, and that the plaintiff took said notes well knowing all the terms and conditions of said agreement.

The plaintiff joined issue on the 1st and 2nd pleas, traversed the 4th, 5th, 6th and 7th, and demurred to the 8th, 9th, 10th, 11th and 12th pleas. This demurrer was sustained, whereupon issue was joined on all the pleas, and the case went to the jury resulting in a verdict for the plaintiff for the amount due on the two notes. During the trial, nine exceptions were taken to rulings on the evidence, and one to the ruling on the prayers. The first question is presented by the ruling on the demurrer.

As to the eighth and ninth pleas, there is no averment in either that the plaintiff took the notes with knowledge of the fraud charged in one, or of the breach of faith charged in the

other, and there was therefore no error in the ruling as to these pleas. *Banks* v. *McCosker*, 82 Md. 518; *Code*, Art. 13, sec. 75. (Supp. to Code).

The tenth plea does not aver that the agreement set out therein, was in writing. In *McSherry* v. *Brooks*, 46 Md. 113, prayers were rejected which sought to defeat recovery by an endorsee upon promissory notes because of an alleged parol promise by the payee to keep the notes in his possession and not to pass them away, the Court saying : "This would seem to be contrary to all principle and authority," and, that it was not competent "to destroy their legal import and operation by the introduction of parol evidence that the notes were not to be negotiated, notwithstanding the negotiable terms employed on their face." . But it is not necessary, as was contended by the appellee, to allege in the declaration that the promise is in writing. If it appear in proof at the trial to be in writing, it is sufficient for its admission. *Ecker* v. *Bohn*, 45 Md. 285; *Horner* v. *Frazier*, 65 Md. 1.

But if in writing that could not avail in this case, since this plea expressly alleges the execution and delivery of the notes by the defendant to the association, and sec. 43 of Art. 13 of the Code, provides that every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration; and every person whose signature appears thereon, to have become a party for value ; and sec. 45 provides that where value has *at any time* been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time. But apart from these considerations, the plea states a case which does not disentitle the plaintiff to recover, since it alleges that the notes were delivered by the association to the Old Town Bank, "as collateral security for advances to be made by it to the association ;" and in *Maitland* v. *The Citizens' Bank*, 40 Md. 562, it is said that "every person is within the rule, and entitled to the protection of a *bona fide* holder for value, who has received the note in payment of a precedent debt, or has taken it as collateral security for a precedent debt, *or for future*, as well as past advances." The Old Town

Bank therefore, as well as the plaintiff, is presumed to be a holder for value; and in *Cover* v. *Myers*, 75 Md. 419, the Court said: "Where a negotiable instrument is originally infected with fraud, invalidity, or illegality, the title of the original holder being destroyed, the title of every subsequent holder which reposes on that foundation, *and no other*, falls with it. But if any subsequent holder takes the instrument in good faith, and for value, before maturity, he is entitled to recover on it; and so any person taking title under him may recover, notwithstanding such latter holder may have knowledge of the infirmities of the instrument; and all that is required of the holder in such case, is, that it be proved that he, or some preceding holder, or endorsee, under whom he claims, acquired title to the paper before maturity, *bona fide*, and for value." And this view of the law has since been formulated in sec. 77 of Art. 13. We find no error therefore in the ruling as to this plea.

The only difference between the 10th and 11th pleas is that the latter alleges these notes were given to the association for its accommodation, and that this fact was known to the plaintiff. But this does not alter the case, nor destroy the negotiability in fact of paper which was made negotiable in form, for the accommodation of the party receiving it; for, as was said in *Maitland* v. *Citizens' Bank, supra:* "The result of all the well-considered cases upon the subject is, that it is no defense that the note sued on was known to be an accommodation note between the maker and the payee, provided the plaintiff took the note *for value, bona fide* before it was due. The reason is, as stated by MR. JUSTICE STORY, that the very object of any accommodation note is to enable the party accommodated, by sale or negotiation, to obtain a free credit and circulation of the note, and this object would be wholly frustrated, unless the purchaser, *or other holder for value*, could hold such a note by as firm and valid a title, as if it were founded in a real business transaction." And sec. 48 of Art. 13 of the Code, declares that "An accommodation party is one who has signed the instrument as maker, drawer, acceptor or en-

dorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a party is liable on the instrument *to a holder for value*, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." It is obvious from the above language of the Code, and from that of *Maitland's case*, that an accommodation note, taken for value and before maturity, is taken *bona fide*, and what we have said respecting the tenth plea is equally applicable to the eleventh plea.

The twelfth plea is based upon the alleged executory agreement between the defendant and the association, which is sufficiently stated in the earlier part of this opinion. The plea avers knowledge by the plaintiff of the terms of this agreement when the notes were taken, but contains no averment of breach and notice of breach before the plaintiff took the notes and parted with its money on their faith and credit. Upon principle, it would seem that this must constitute a fatal defect in the plea, and the authorities sustain this view. The rule is stated thus in *U. S. Nat. Bank* v. *Floss*, 38 Ore. 68 (62 Pac. 751): "The breach of an executory agreement which forms the consideration of a negotiable note, is not a defense in whole or in part against an endorsee who took the note for value before maturity, even if he had notice of the contract, unless he was also informed of the breach before its purchase." In *Davis* v. *McCready*, 17 N. Y. 233, the reasons upon which this rule rests, are well stated in an opinion by JUDGE DENIO. In that case, the consideration for the acceptance of a bill of exchange was the sale of a brig, accompanied by an executory agreement of the vendor to make such repairs as would render her seaworthy. The defense was that this agreement had not been performed; but the Court said: "The plaintiffs were not bound to follow up the transactions between the original parties to the bill. To hold otherwise would attach an inconvenient and repugnant condition to such an acceptance. By accepting simply and unconditionally a negotiable bill, the defendants are to be held as intending to give it *all* the qualities of commercial paper, *one* of which is that it shall circulate

freely for the purposes of business, and be available in the hands of any holder for value.    To decide that one who pro-posed to purchase it, and who had a knowledge of the trans-action upon which it was given, must await the consummation of that transaction, would essentially impair its character and legal effect."

So in *Arthurs* v. *Hart*, 17 Howard, 6, the Supreme Court of the U. S. said: "It is true the plaintiffs knew, at the time they took the paper, that it was given as part of the price of a sugar mill, and that the mill had been defectively constructed; but they also knew that the defendant, upon the promise of the builders to make the necessary repairs, had agreed to accept the bill unconditionally, and had accepted it accordingly. They knew therefore that he looked to this undertaking for indemnity, and not to any conditional liability upon the ac-ceptance, and the transaction which is brought home to the plaintiff, lays no foundation, in law or equity, to impeach the paper in their hands."    We are of opinion therefore that the demurrer was correctly overruled as to all the pleas to which it was addressed.

The demurrer having been overruled, the plaintiff put in evidence the certificate of the incorporation of the association, and of the amendment thereto, showing that it was a trading corporation with large and varied powers, incorporated De-cember 5th, 1899, with a capital stock of only $1,000, but that by amendment certified February 27th, 1900, the capital stock was increased to $250,000.    The plaintiff also proved payment of the proper bonus tax upon the original and amended certificates of incorporation, and then proved by Miles W. Ross that he was a clerk in the employment of the association, at its principal office in Baltimore City, from Feb-auary 7th, 1900, to September 4th, 1900, when it went into the hands of receivers; that during the period of his employ-ment, the association received notes, checks and drafts all of which were endorsed by J. B. Councilman, Treas.; that he knew Mr. Councilman's signature, and that the name of the association was always endorsed with a rubber stamp.    The

two notes sued on were then shown him, endorsed: "The United Milk Producers' Association of Baltimore City, Jas. B. Councilman, Secy. and Treas.," by a rubber stamp, and "J. B. Councilman, Treas.," and he testified that he recognized, this signature as Mr. Councilman's, and that the name of the association was endorsed in the usual way with a rubber stamp. These two notes were then offered in evidence by plaintiff and were admitted over defendant's objection, and to this ruling the first exception was taken. The defendant contends that a corporation can only make such contracts as are. authorized by its board of directors, and that such contract is then made through an agent, whose authority can only be shown by a vote of the board. But this is too general and broad a statement of the law on the subject. It is true that in the absence of express authority conferred by charter or by law, there is no power inherent in the office of secretary or treasurer that would enable him to make or endorse promissory notes in the name of the corporation; but on the other hand, to hold that for every transaction of this charcter, it is necessary to show a vote of the board, no matter what may be the custom of the corporation in this regard, would be to take an untenable position. Thus in vol. 1, 2nd ed., *Amer. and Eng. Ency. of Law*, p. 1033, it is said: "The power of an agent to draw and endorse negotiable instruments, must, *as a general rule*, be expressly conferred, yet in some cases it is necessarily implied from the duties to be performed. * * * * Where the execution or endorsement of negotiable paper is necesssary or customary in the transaction of the business, authority in the agent may be implied." "Parol evidence is admissible to show the authority of an endorser's agent to endorse." *Miller* v. *Moore*, 1 Cranch (C. C.) 471. "A corporation may confer authority by parol upon an officer to issue or endorse negotiable paper." *Odd Fellows* v. *First Nat. Bank of Sturgis*, 42 Mich. 461. "The implication of power arises where the act falls under the customs and usages of business within the officer's sphere of duty." 1st *Daniel on Neg. Inst.*, sec. 396; *Farmers' and Mechanics' Bank of Kent Co.* v. *Butchers' and Drovers' Bank*, 16 N. Y. 125.

Special reliance is placed by defendant on the case of the *City Electric Street R. W. Co.* v. *First Nat. Exchange Bank*, 31 L. R. A. 536 (62 Ark. 33), where it is said: "Unless the authority is expressly conferred by the charter, or given by the board of directors, it may be stated, *as a general proposition*, that the president and secretary of a corporation are not empowered to bind it by their signatures to commercial paper. * * * Where the authority of the president and secretary is challenged, as it has been by the answer in this case, that authority should be shown by the proof, and not be presumed as matter of law." And in the *Floyd. Acceptances*, 74 U. S. 666 (7 Wall.), JUSTICE MILLER said: "The person dealing with the agent, knowing that he acts only by a delegated power, must at his peril see that the paper on which he relies comes within the power under which the agent acts, for it is to be kept in mind that the protection which commercial usage throws around negotiable paper, cannot be used to establish the authority by which it was issued or endorsed." Accepting fully both those authorities, we think they in no way affect the present case. In *Credit Co., Limited*, v. *The Howe Machine Co.*, 54 Conn. 357, the strong Court of that State held that drafts accepted by the treasurer of a corporation are presumed to be properly accepted by the corporation, there being no circumstances to indicate fraud or illegality; and in an action by the holder against the corporation as acceptor, the burden of proof is upon the defendant corporation to show that the plaintiff had knowledge that the acceptances were for accommodation, and that he was not a *bona fide* holder for value. In the course of the opinion in that case, JUDGE CARPENTER said: "A preliminary question of some importance is, on whom was the burden of proof? In the pleadings, the defendant assumes that burden; and properly so upon principle. The drafts apparently may be for a legitimate purpose. As there is some presumption that all parties act properly, and within the scope of their powers, the plaintiff establishes a *prima facie* case when it presents the drafts duly drawn and accepted, there being no circumstances indi-

cating fraud or illegality.   And so are the authorities.   *Edwards on Bills*, 686, 689 ; *Daniel on Neg. Inst.*, secs. 656, 662; I *Parsons on Notes and Bills*, 255.   \*   \*   \*   \*   *The course of dealing* by the defendant shows clearly the treasurer had power to accept drafts ; but it is claimed that under the circumstances he had no power to accept these particular drafts. Obviously, the authority, or want of authority, in the treasurer to accept these drafts depended, not upon the nature of the act, but upon the attending facts and circumstances.   That he had power to accept drafts under some circumstances is not denied.   Hence, if they were drawn on account of the defendant's business or to draw out of the treasury money which belonged to the drawer of the draft, the power of the treasurer to accept them must be conceded."   And to the same effect is *Nat. Bank of Battle Creek* v. *Mallan*, 37 Minn. 404, and I *Beach on Corp.*, sec. 189.   There is much in the reasoning of the Connecticut case above cited which strongly commends itself to us, but it is not necessary for us to determine here upon whom the burden of proof lies in such respect, since here the plaintiff assumed that burden, and offered evidence showing the course of dealing by the association, and that it was accustomed to receive notes, checks and drafts which were habitually endorsed by the secretary and treasurer under the same circumstances, and in the same manner that these notes were endorsed.

Both upon principle and authority we think these notes were properly admitted in evidence.

The plaintiff then, by Miles W. Ross, proved that the signatures to a note for $5,000 then shown him were the signatures of W. B. Crother, prest., and J. B. Councilman, treasurer, known to him, and that the note was endorsed by J. B. Councilman, treasurer.   He was also shown certain pass-books which he identified as the pass-books of the association with the Old Town Bank, and the plaintiff then closed its case.

The defendant then offered to prove by himself the alleged agreement set forth in the twelfth plea, and to follow it up with proof that Granville Haines, who was the president of the

plaintiff at the time these notes were taken, had notice of the terms and conditions of said agreement. The plaintiff objected, and the second exception was taken to the rejection of this offer. If the demurrer to the twelfth plea was correctly over-ruled, it would follow that the exclusion of the facts therein alleged, when offered in evidence could work no injury to the defendant. Moreover this offer of proof was made as a whole, and it could be of no avail to prove the alleged agreement without proof also of such knowledge by Mr. Haines as would bind the plaintiff, and it is seen that the offer of proof does not propose to show that the facts were communicated to Mr. Haines *officially*, to be brought by him to the knowledge of the board, and it is settled in this State, however, the law may be elsewhere, that " the sound and safe rule on this subject is, that notice given to a director of an incorporated institution privately, or which he acquires from rumor, or through chan-nels open alike to all, and *which he does not communicate to his associates at the board*, will not bind the institution." *U. S. Ins. Co.* v. *Shriver*, 3 Md. Ch. 388; *Genl. Ins. Co.* v. *U. S. Ins. Co.*, 10 Md. 523; *Gemmell* v. *Davis*, 75 Md. 553. It follows that there was no error in excluding this offer of evidence.

The defendant then proved by Geo. R. Gehr that he had been the plaintiff's cashier since 1895, and that his bank took the two notes sued on on June 7th, 1900, and that he had agreed on June 6th, over the telephone to take them ; that he received them from Mr. Wilcox, Cashier of the Old Town Bank, and that they had sent two drafts to the Old Town Bank payable to it, and that he had paid the Old Town Bank the proceeds of the note. On cross-examination he was then shown a note for $5,000 made June 6th, 1900, by the associa-tion, payable to the order of James B. Councilman, Treas., at the old Town Bank, ninety days after date, and endorsed J. B. Councilman, Treas., and this note was offered in evidence, and was admitted over the objection of the defendant, and to this ruling the third exception was taken. The ground of this objection is that defendant did not introduce this note nor in-terrogate the witness respecting it, and therefore it was not a

proper subject of cross-examination. Under ordinary circumstances, it is true that in this country the cross-examination can only relate to facts and circumstances connected with the matters stated in the direct examination of the witness, and that if a party wishes to examine a witness as to other matters, he must do so by making the witness his own, though the rule in England is that where a witness is called to a particular fact, he may be cross-examined upon all matters material to the issue. But the rule indicated has its qualifications, and much must be left to the discretion of the presiding Judge in the determination of this question. 3 *Jones on Evidence*, sec. 821. " One of the objects of the cross-examination is to elicit the whole truth of transactions only partly explained, and the rule limiting the inquiry to the general facts stated in the direct examination, must not be so construed as to defeat the real object of the cross-examination." *Idem.* Here the defendant inquired into the circumstances under which the plaintiff took the two notes sued on, and any circumstances connected with, and explaining the taking of, those notes would seem to come within the qualification of the rule above stated. The author just quoted, citing numerous cases, says: " unless a trial Court should so far over step the bounds as to admit that in cross-examination which clearly has no connection with the direct testimony, an appellate Court would not be justified in reversing a judgment for such cause, especially where the cross-examination is upon facts competent to be proved under the issues in the case." Here the matter thus inquired into was the foundation of the whole transaction and the notes inquired of by defendant were collateral thereto. Under these circumstances the discretion of the trial Judge must be upheld.

The fourth and sixth exceptions were taken to a continuation of the cross-examination begun and referred to in the third exception and which related to the circumstances under which the $5,000 note of the association was taken and how the proceeds of said note were paid to the Old Town Bank, and it follows from what we have said there was no error in these rulings. The fifth exception was taken to the admission

in evidence of a letter of June 6th, from Wilcox, cashier of the Old Town Bank, to Gehr, cashier of the plaintiff, referring to the $5,000 note of the association above mentioned. We think it was error to admit this letter, because its effect was to admit the unsworn statement of a third party to prove that the note was to be discounted, and that Wilcox had charged plaintiff with proceeds of that note less ninety-one days discount, one of the questions at issue being whether the note was discounted or sold. But we do not think its admission constitutes reversible error, because, after that exception, in continuing the cross-examination of Gehr, which we have said was properly allowed, the plaintiff proved, *without objection by the defendant*, through a letter of June 7th, 1900, from Gehr to Wilcox, that his letter of 6th inst. was received, and that he had credited "$4,924.17 pro. of note disctd," that being the exact amount which Wilcox in his letter said should be the proceeds of the note which he sent "to be discounted."

The seventh exception was taken to the allowance of a question asking what had been paid on the collateral notes, and this question was addressed in rebuttal to the cashier of the plaintiff. If sufficient had been paid on these notes to discharge the $5,000 note, it is obvious there could be no recovery on the two notes here sued on. There was therefore no error in allowing the question. Indeed, under our previous ruling, this question might have been asked as part of the cross-examination. The plaintiff then proved by James R. Schultz, that he had been in the employment of the Old Town Bank for three years, and continued so during the year 1900, and plaintiff then offered in evidence the pass-books of the association with the Old Town Bank which had been identified by Mr. Ross, and which showed among other debits and credits the following:

June 7th 1900, Dr. $5,000 00                        Cr.
   "      "   Dis.    75 83                    $4,924 17

To this offer the defendant objected, but the objection was overruled and the pass-books were admitted and this constitutes the eighth exception.

The books being admitted, Schultz identified them and testified that the entries of that date, including the one above set forth, were in the handwriting of Mr. Price, one of the tellers of the Old Town Bank. He was then asked to "state what were the discounts under June 7th," to which the defendant objected, but the objection was overruled, and this constitutes the ninth exception.

These pass-books had been previously identified by Mr. Ross, and only the entries of June 7th, 1900, the date when it had been already shown this $5,000 note was received by the plaintiff from the Old Town Bank, were offered in evidence, and we can perceive no reason why they should not have been admitted in order that the jury might determine therefrom, so far as these entries threw any light upon the transaction, what the parties understood and intended it to be.

Not having made these entries himself however, and not professing to have any actual personal knowledge of what these items represented, we think it was error to allow him to state what he understood them to represent. He could only draw deductions from the entries themselves, or as he says in his answer "argue" that the particular $5,000 item with discount of $75.83, referred to the note of June 6th, for that amount, because that was the correct discount for 91 days. But it was the province of the jury to draw this inference from all the facts in evidence, including these entries. Again however, we think the error was a harmless one, because these entries, unexplained by Schultz, or in any manner, necessarily *tended* to show the identity of the $5,000 note in evidence with that therein referred to as subject to discount of $75.83, and it is not reasonable to ask an appellate Court to find that any inference of the jury was drawn from the inference of Schultz, rather than from their own unaided common sense as applied to the meaning apparent from the face of the entries.

At last then we come to the ruling on the prayers brought up by the tenth exception.

The plaintiff offered two prayers which were granted, and the defendant offered five which were rejected. The substance

of both the plaintiff's prayers is, that if the two notes sued on were executed by the defendant and delivered to the association, and that before their maturity said notes were endorsed in blank by said association and delivered with other notes similarly endorsed, to the Old Town Bank ; and if the $5,000 note of said association of June 6th, 1900, was endorsed in blank by the secretary and treasurer and was delivered to the Old Town Bank, and was discounted by the plaintiff for the Old Town Bank upon the faith and credit of the two notes sued on together with the other notes similarly endorsed and delivered with said two notes, as collateral security for said $5,000 note, and that the proceeds of said $5,000 note were paid by plaintiff to said Old Town Bank, and that there was still due and unpaid on said $5,000 note, a sum greater than the amount due upon said two notes, then the plaintiff is entitled to recover.    The second prayer of the plaintiff also instructs the jury that there was no evidence legally sufficient to show bad faith on the part of the plaintiff in receiving said notes.    We think the theory and form of these prayers correct, and that they were properly granted, and that the defendant's special exception thereto on the ground that there was no evidence to show that the $5,000 note, or the notes sued on, were discounted, was properly overruled.

The abstract principle embodied in the defendant's first prayer is correct, if it were so framed as to require merely the same preponderance of evidence required of every plaintiff in *all* essential matters of proof on his part.    But we think it was correctly rejected for the reason assigned in the plaintiff's special exception thereto ; viz., that it was calculated to lead the jury to suppose that full power and authority to endorse the notes sued on could only be *expressly* conferred, and that the evidence of *implied* authority arising from the custom proved, and from ratification by acceptance of the proceeds of the $5,000 note, which the prayer ignored, was insufficient to prove such authority.

The defendant's 2nd, 3rd, 4th and 5th prayers are all based upon the theory that there was evidence proper to be sub-

·mitted to the jury to show that the $5,000 note and the two notes sued on, were sold to, and were not discounted by the plaintiff; that such purchase was not within the corporate powers of the plaintiff, and that such defense was open to defendant, and precluded recovery by the plaintiff. But we do not find that there is any legally sufficient evidence that the transaction was a sale, and the plaintiff specially excepted to all these prayers on that ground.

In *Lazear* v. *Union Bank*, 52 Md. 78, there was such evidence. The Court says on page 124, "The evidence shows that Winchester and Son, note and bill brokers, were employed by Lazear Bros. to *sell* the note of June 22nd, 1872, to any purchasers· willing to buy, and that it was *sold* to the appellee over the counter of its banking house, at *nine* per cent discount for Lazear Bros., the drawers, who received the proceeds of sale."

Here the evidence of the plaintiff's cashier, Gehr, who was put upon the stand by the defendant, is that the $5,000 note was *discounted* (the notes sued on being shown to be among the collateral given therefor), and that the amount of the discount was the legal rate for ninety-one days, the time that the note ran.

"To discount paper, as understood in the business of banking, is only a mode of *loaning* money, with the right of taking the interest, *allowed by law*, in advance." Vol. 2, 2nd ed., *Amer. and Eng. Ency. of Law*, p. 469.

This term has been defined by this Court in almost the same exact language in *Weckler* v. *First Nat. Bank*, 42 Md. 592, where JUDGE MILLER says: "The ordinary meaning of the term 'to discount,' is to take interest in advance, and in banking, is a mode of *loaning money*. It is the advance of money not due until some future period, less the interest which would be due thereon when payable." Only the *legal* rate of interest would be due on the principal when payable, and thus JUDGE MILLER's definition of the term is shown to be the same as that given above. If the legal rate were exceeded, a presumption *might* arise that the parties intended,

or the law implied, a sale rather than a discount, because a sale (between ordinary parties at least) would be legal at any rate of deduction agreed on, but where *a bank* discounts paper at a rate exceeding that allowed by law, the transaction would be within the usury law.

Being of opinion that there is in this case no legally sufficient evidence to show a purchase of these notes, or of the $5,000 note, we have no occasion to consider the conflict between the decision in *Lazear's case*, and those decisions of the U. S. Supreme Court upon sec. 5136 of the Nat. Banking Act, in *Nat. Bank* v. *Matthews*, 98 U. S. 626, and *Nat. Bank* v. *Whitney*, 103 U. S. 99, (cited with apparent approval in *Heironimus* v. *Sweeney*, 83 Md. 160, in an opinion concurred in by the full bench) as well as the later case of *Nat. Gloversville Bank* v. *Johnson*, 104 U. S. 271. In the still more recent case of *Danforth* v. *The Nat. State Bank*, 48 Fed. Rep. 271, it was held that cases could not be distinguished where the title to the paper is transferred by an endorsemsnt imposing the ordinary liability upon the endorser, from those where it is transferred by endorsement without recourse, or by mere delivery. In *United German Bank* v. *Katz*, 57 Md. 141, this Court reviewed the case of *Lazear* v. *Nat. Union Bank, supra*, and distinguished it from the case before them, holding that the doctrine of *ultra vires* is not applicable to executed contracts, which the Court said "by the plainest rule of good faith should be permitted to stand." In that case it was held that the United German Bank had no authority to discount promissory notes, but the Court said: "It does not follow, as a consequence of this view, that because the appellant exceeded its legitimate powers in procuring this note by discounting the same, that recovery cannot be had. If he received the plaintiff's money, or was the knowing instrument of some one else doing so, he ought not to escape liability to pay on that ground. * * Whether he received the money personally or not, is immaterial, if by his procurement some one else did get the money upon the faith of what he did. It was all one transaction."

So in the case before us, the First Nat. Bank of Westminster is supposed to have parted with its money upon the faith, not only of the principal note of $5,000, but also of the other notes put up as collateral. "The two, as elements of the consideration, are inseparable. The Courts will not inquire whether the holder parted with value because of the original or collateral paper. They consider such value given for both." *Bank of State of N. Y.* v. *Vanderhorst,* 32 N. Y. 553; *Norton on Bills and Notes,* 3rd ed., pages 314, 315.

Being thus an executed contract, even if the transaction were a sale and not a discount, recovery could be had under the *Katz case, supra,* which was held not to be in conflict with *Lazear's case.*

Finding no reversible error in any of the rulings of the lower Court, the judgment will be affirmed.

> *Judgment affirmed with costs above and below.*

(Decided January 22nd, 1903.)